UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 7:08-CV-00045-KKC

HAROLD DEAN BENTLEY,
KIRBY SLONE and JOHN BARKLEY
SLONE                                                                                                    PLAINTIFFS

v.                                    **OPINION AND ORDER**

RANDY THOMPSON, Individually
and in his Capacity as JUDGE-EXECUTIVE
of Knott County, Kentucky and KNOTT
FISCAL COURT                                                                                      DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion for Summary Judgment (Rec. No. 31) filed by Defendants Knott County Fiscal Court ("Knott County") and its Judge-Executive, Randy Thompson ("Thompson"), individually and in his official capacity (collectively "the Defendants"). For the reasons set forth below, the Court will deny the motion.

**I.      FACTUAL BACKGROUND**

This dispute revolves around the November 2006 election ("the election") for Knott County Judge-Executive between Thompson and the democratic candidate Mike Hall and layoffs that occurred in November of 2007. Plaintiffs Harold Dean Bentley ("Bentley"), Kirby Slone and John Barkley Slone were laid off at that time. Each Plaintiff received an identical letter signed by Thompson, as Knott County Judge-Executive, explaining that:

> [d]ue to an unexpected decrease of revenue in our LGEA fund, the fund that is responsible for paying the payroll for many county employees and their benefits, I must, effectively immediately, lay you off from your current position with the Knott County Fiscal Court. This is a most difficult decision for me, but I feel it is a necessary move at

this time. I do hope to be able to have you return to the position if our LGEA receipts return to their anticipated level.

On March 12, 2008, Plaintiffs filed suit alleging that they were laid off in retaliation for their exercise of their First Amendment rights of free speech and association in violation of 42 U.S.C. § 1983. (Rec. No. 1, Complaint, ¶¶ 6-12).[1] Furthermore, Plaintiffs have alleged that the reason given for their layoffs - budget shortfalls - was pretextual.[2] In response, Defendants filed the instant motion for summary judgment claiming that the layoffs had nothing to do with Plaintiffs' support for the candidacy of Mike Hall or any other constitutionally protected conduct. Instead, Defendants assert that layoffs were instituted on a countywide basis in response to temporary financial problems that Knott County was facing.

**A. Plaintiff Harold Dean Bentley**

Bentley was employed by Knott County for fourteen years and worked as a backhoe operator when he was laid off.[3] (Rec. No. 20, Second Amended Complaint, ¶1). Several weeks prior to being laid off, Bentley testified before a federal grand jury about misappropriation of

---

[1] Bentley also alleges that his discharge was motivated by his exercise of his freedom of speech in testifying in front of a grand jury in London, Kentucky in connection with an investigation of Thompson and his administration. This investigation ultimately led to the indictment of Thompson and other members of his administration. (Rec. No. 20, Second Amended Complaint, ¶8).

[2] Plaintiffs claim that there would have been no budget short fall if Thompson had not wasted and converted taxpayer funds for activities that he was ultimately indicted for. They also allege that the decision to discharge them had no rational basis and was not based on seniority but instead was based on unconstitutional consideration of the employee's support or lack of support for Thompson's 2006 re-election campaign. (Second Amended Complaint, ¶11).

[3] Previously, he had worked as a road foreman until approximately eleven months before his layoff. (Rec. No. 33, Bentley Aff., ¶4).

public funds by Thompson and other members of his administration.[4]  He claims that after testifying, he received a threatening phone call from Ronnie Adams, head of the Knott County Road Department.[5]

Bentley supported Mike Hall, Thompson's opponent in the 2006 election for Judge Executive.  (Rec. No. 20, Second Amended Complaint, ¶8).  In the weeks prior to the election, Magistrate Judge John Wesley Short visited Bentley's home and informed him that Thompson knew that he was "against him and that it would not take much for Randy to cause" him to "lose his job."  (Rec. No. 33, Bentley Aff., ¶15).[6]  Bentley has indicated that he supported Mike Hall's campaign by "talk[ing] to some people."  However, he has acknowledged that he "didn't get out, you know, full blast or nothing."  (Rec. No. 28, Bentley Dep. at 38).

Bentley has also acknowledged that neither Thompson or any other member of his administration ever said anything to him about trying to get votes for Mike Hall.  (Rec. No. 28, Bentley Dep. at 38-39).  When asked whether any of the other individuals who were laid off in November 2007 were Mike Hall supporters, Bentley stated that "I don't know.  There could've

---

[4] Bentley states that he was contacted by federal investigators during the summer of 2007 because of unusual spending practices that occurred during the 2006 election for Judge Executive.  (Rec. No. 33, Bentley Aff., ¶5).  He testified before the federal grand jury on October 26, 2007 and was laid off approximately three weeks later.  (Rec. No. 33, Bentley Aff., ¶8).  Bentley also testified against Thompson and other members of his administration during their criminal trial in 2008.  (Rec. No. 33, Bentley Aff., ¶9).  He claims that this cooperation was well known throughout Knott County and that it, along with his lack of political support for Defendant Thompson, led to the decision to lay him off.  (Rec. No. 33, Bentley Aff., ¶10).

[5] Bentley claims that during the course of the phone call, Adams suggested that Bentley was also involved in the unusual spending activities that were the subject of the grand jury investigation.  (Rec. No. 33, Bentley Aff., ¶13).  He believes this call was an attempt by Thompson and others in the administration to intimidate him because of his cooperation with the federal investigation.  (Rec. No. 33, Bentley Aff., ¶14).

[6] Bentley also claims that Magistrate Short informed him that he was afraid that he would lose his job because of his lack of political support for Thompson.  (Rec. No. 33, Bentley Aff., ¶15).

3

been....You know, I can't say who this and that one was for....Well, I don't know how–Nobody knows who anybody goes and votes for." (Rec. No. 28, Bentley Dep. at 42-43). However, Bentley claims that while other laid off employees were eventually recalled to work with Knott County, he was never was.[7]

**B. Plaintiff Kirby Slone**

Kirby Slone was employed by Knott County for ten years and worked as a laborer when he was laid off. (Rec. No. 20, Second Amended Complaint, ¶2). He acknowledges that approximately ten other workers were also laid off from the road department at the same time. (Rec. No. 33, K. Slone Aff., ¶2). Several months after being laid off, Kirby Slone was recalled and worked for Knott County for a brief time before pursuing other employment.[8]

Kirby Slone supported Mike Hall's candidacy during the election by placing bumper stickers on his car and a sign in his yard.[9] He claims that prior to the election, Deputy Judge-Executive Phillip Champion instructed him to "take the stickers off the vehicle and put his [Thompson's] on," because if he did, Thompson would make it easy on him and if he left them on his vehicle, Thompson would make it hard on him. (Rec. No. 30, K. Slone Dep. at 18).

---

[7] A sworn statement by Ronnie Adams, Knott County road foreman, suggests that Bentley was offered a job with the county after being laid off. (Rec. No. 32, Exh. 2). However, Bentley disputes this and claims that he never received any such offer after being laid off. (Rec. No. 33, Bentley Aff., ¶11).

[8] In an affidavit, Kirby Slone explained that upon being recalled, he received an offer of seasonal work which was not satisfactory because the work was intermittent and would not provide him with health insurance benefits if he was laid off. (Rec. No. 33, K. Slone Aff., ¶4).

[9] In fact, he claims that Plaintiffs were among the most politically active members of the Knott County workforce that did not support Thompson. (Rec. No. 33, K. Slone Aff., ¶6).

### C. Plaintiff John Barkley Slone

John Barkley Slone was employed by Knott County for fifteen months, working primarily as an equipment operator before being laid off. (Rec. No. 20, Second Amended Complaint, ¶3). He was recalled to work for the county in early 2008 but subsequently left his position to pursue other employment.[10]

John Barkley Slone alleges that in the weeks leading up to the election, he and his father-in-law were approached by Thompson in an attempt to solicit their political support. However, they advised Thompson that they would be supporting Mike Hall.. (Rec. No. 29, J. Slone Dep. at 16-17). He also claims that Deputy Judge-Executive Phillip Champion explained to him that it would be harder to keep his job if he did not get his father-in-law to support Thompson. (Rec. No. 33, J. Slone Aff., ¶3).

## II.   ANALYSIS

### A. Summary Judgment Standard.

Pursuant to Federal Rule of Civil Procedure ("FRCP") 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

---

[10] John Barkley Slone acknowledges that he was called back to work approximately five months after the November 2007 layoffs. (Rec. No. 33, J. Slone Aff., ¶3). However, he claims that he stopped working for Knott County when he realized that upon being recalled his employment benefits were less than before the layoff because the work was intermittent and he did not receive health insurance. (Rec. No. 33, J. Slone Aff., ¶7). He also claims that other recalled employees who were not politically active did not receive such lesser positions. (Rec. No. 33, J. Slone Aff., ¶7)

**B. First Amendment Retaliation Claim.**

To establish a *prima facie* case for a First Amendment retaliation claim, public employees are required to show that they: (1) engaged in constitutionally protected conduct; (2) were subjected to an adverse employment action or deprived of some employment benefit; and (3) that the protected speech was a 'substantial' or a 'motivating factor' for the adverse employment action. *See Brandenburg v. Hour. Auth. of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001)(citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)). After a plaintiff successfully makes a *prima facie* showing, the burden shifts to the defendant to show by a preponderance of the evidence that there were legitimate non-discriminatory reasons for the adverse employment action taken and that the same employment decisions would have been made even if the plaintiff had not engaged in the constitutionally protected activity at issue. *Leary v. Daeschner*, 349 F.3d 888, 898 (6th Cir. 2003).

**1. Protected Conduct**

The first step in establishing their *prima facie* case requires Plaintiffs to show that they engaged in constitutionally protected activity. In this case, Plaintiffs allege that they were the most politically active members of the Knott County workforce who did not support Thompson's reelection bid. The evidence in this case is sufficient to allow a jury to conclude that the Plaintiffs support for Mike Hall was known to Thompson and other members of his administration. Political association is a well established right under the First Amendment because "political belief and association constitute the core of those activities protected by the First Amendment." *Sowards v. Loudon County*, 203 F.3d 426, 432 (6th Cir. 2000)(citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69, 111 L. Ed. 2d 52, 110 S. Ct. 2729 (1990).

Support of a particular political candidate falls within the scope of this right of political association. *Id.* As a result, the Court finds that Plaintiffs have made a *prima facie* showing that they were engaging in constitutionally protected conduct based on the evidence of their support for Mike Hall's candidacy.[11]

### 2. Adverse Action

Plaintiffs must also show that they suffered an adverse action by Defendants that would chill a person of ordinary firmness from continuing to engage in protected activities. *See generally Mt. Healthy*, 429 U.S. at 274; *Sowards v. Loudon County*, 203 F.3d 426, 433 (6th Cir. 2000); *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997). Here, Plaintiffs were laid off from their employment in November 2007. Defendants primary argument on this point is that two of the three Plaintiffs were subsequently recalled to work several months later and made the same salary upon being recalled as before the layoffs. However, the Court finds that the layoffs are an adverse employment action. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)(en banc)(explaining that examples of adverse actions in the employment context include discharges, demotions, transfers, refusals to hire, nonrenewal of contracts and failure to promote). It seems apparent that the threat of losing ones job, even if only temporarily would chill ordinary employees from exercising their constitutional rights including supporting certain political candidates. In addition, in this case Bentley was never recalled and John Barkley and Kirby Slone have presented evidence that the positions they received upon recall were inferior to the

---

[11] Defendants have not argued that Plaintiffs' conduct is not constitutionally protected. Rather they focus their arguments on the absence of a substantial connection between Plaintiffs' constitutionally protected conduct and the decision to lay them off. Defendants have emphasized that the same employment decisions would have been made regardless which candidate Plaintiffs supported in the 2006 election.

ones they held prior to being laid off.  Consequently, Plaintiffs have made a *prima facie* showing that they suffered an adverse employment action.

**3. Causal Connection**

Finally, to establish a *prima facie* case, Plaintiffs must show that their political support for Mike Hall's candidacy was a substantial or motivating factor behind the decision to lay them off in November 2007.  In doing so, Plaintiffs must present enough evidence to allow a reasonable juror to find in their favor.  The Sixth Circuit has explained that "the non-moving party may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent.  Rather, the employee must link the speech in question to the Defendant's decision to [demote] her." *Painter v. Campbell County Bd. of Educ.*, 417 F.Supp. 2d 854, 863 (E.D. Ky. 2006)(citations omitted).  In doing so, the employee must point to "specific non-conclusory allegations reasonably linking her speech to employer discipline." *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 144 (6th Cir. 1997).  However, Plaintiffs may rely on circumstantial evidence to show that Defendants' decision to lay them off was motivated by their protected activities.  *Conklin v. Lovely*, 834 F.2d 543, 546-547 (6th Cir. 1987).

Plaintiffs argue that "there are clearly questions of fact as to the motivations of the Defendants given the combination of the retaliatory statements or comments made to each of the Plaintiffs, the timing of the comments, and the uncertain state of the Knott County Fiscal Court finances during the time in question."  Plaintiffs also argue that "a jury could well draw a fair inference that given the timing of Bentley's cooperation with the Federal Criminal Investigation, and the abrupt ending of his fourteen year career, that there was a causal connection between the two."  The Court agrees, while recognizing that this is a close case.

Bentley has presented evidence that he was informed that it would not take much for Thompson to cause him to lose his job because of his lack of political support. While these statements were made at least one year prior to the layoffs, they support Plaintiffs' claims that their political support for Mike Hall impacted their job security. Additionally, Bentley also apparently received a threatening phone call after testifying against Thompson and his administration before a federal grand jury. Bentley argues that the timing of his grand jury testimony, the threatening phone call he received one day later, and the layoff three weeks after that support a jury's finding of a causal connection. Finally, despite having worked for Knott County for fourteen years, Bentley claims he was never recalled while other employees with less seniority were either retained or recalled.[12]

John Barkley Slone has alleged that he and his father-in-law were approached by Thompson in pursuit of support for his political campaign and that they informed Thompson they would not be supporting him. In addition, he has presented retaliatory statements made by members of Thompson's administration emphasizing "that it would be harder for...[him] to keep his job if he did not get his father-in-law...to support Randy Thompson." These statements were made at least one year before the layoffs and John Barkley Slone acknowledges that he was called back to work five months after being laid off. However, he claims that his recall was motivated by the filing of the instant lawsuit and that the position he was recalled to was inferior to the one that he was laid off from.

---

[12] On this point, Defendants offer a sworn statement by Ronnie Adams that the only job that Bentley could perform was driving a tandem truck but that he was ineligible to perform this job at the time of the layoffs because the physical on his CDL license had expired. (Rec. No., Exh. , p. 20). However, this evidence is refuted by Bentley's affidavit which asserts that he was not limited to driving the truck but could have performed various other jobs for the road department. (Rec. No. 33, Bentley Aff., ¶12).

9

Kirby Slone has also presented retaliatory statements made to him because of his political support for Mike Hall. He claims that Phillip Champion saw Mike Hall stickers on his vehicle and informed him that Thompson would make it hard on him if he did not take them off. However, if he put Thompson's stickers on his vehicle, Thompson would make it easy for him. Kirby Slone acknowledges that no retaliatory statements were made after the 2006 election and that he was recalled after being laid off. However, like John Barkley Slone, he contends that the position that he was recalled to was inferior to the one that he held prior to being laid off. He also claims that other recalled employees were not offered such inferior positions.

While this is a close case, the retaliatory statements made to Plaintiffs leading up to the 2006 election, along with the evidence of corruption in Thompson's administration could allow a reasonable jury to conclude that who an employee supported in the 2006 election affected layoff decisions one year later.[13] Because Plaintiffs have met their burden of making a *prima facie* showing, the burden shifts to the Defendants to establish by a preponderance of the evidence that the same employment decisions would have been made even if Plaintiffs had not supported Mike Hall's candidacy and declined to support Thompson and his administration. *Leary v. Daeschner*, 349 F.3d at 898.

Defendants claim that the Plaintiffs' support for Mike Hall in the 2006 election had nothing to do with the layoff decisions and that the county's financial condition necessitated the decision to reduce payroll. In support of this position, Defendants have shown that several other

---

[13] Similarly, based on the alleged retaliatory statements made to Bentley following his grand jury testimony and the fact that he was never recalled, despite having worked for Knott County for fourteen years, a jury could infer that a causal connection exists between his cooperation with the federal grand jury investigation and the decision to lay him off.

10

Knott County employees were laid off from across several departments - including the road department - in November 2007. Furthermore, Road Foreman Ronnie Adams testified that the decision regarding which employees would be laid off from the road department was based on seniority except in two cases. Apparently, the department had only one mechanic who needed to be retained despite a lack of seniority. In addition, Adams claims that there was only one person qualified to drive a truck used to haul gravel that also had to be retained despite lacking seniority. Defendants have also presented testimony from several employees who were laid off in November 2007, expressing their belief that the layoffs were due to the financial problems Knott County was facing and had nothing to do with politics.

Defendants also look to the Sixth Circuit's unpublished decision in *Helwig v. Pennington*, 30 Fed. App'x 516 (6th Cir. 2002) in support of their motion for summary judgment. In *Helwig*, the Court affirmed the grant of summary judgment in favor of the Defendants with respect to an across the board pay cut that affected all existing employees and new hires equally. *Id.* at 522. Defendants assert that *Helwig* supports their position because the November 2007 layoffs were across the board. The Court disagrees. Unlike the salary cuts which affected all employees equally in *Helwig*, Defendants laid off certain employees in November 2007 while retaining others. In addition, certain employees apparently received positions with better salaries and benefits upon being recalled than John Barkley and Kirby Slone received. In fact, Kirby and John Barkley Slone have claimed that they were the only employees who received such inferior positions upon being recalled. Because the adverse employment decision in this case apparently did not affect all employees equally, this case is distinguishable from *Helwig*.

Plaintiffs have also presented evidence calling into question the precise financial

11

condition of Knott County in November of 2007.[14]  In addition, Plaintiffs have questioned whether the layoff decisions were actually based on seniority as Defendants assert.  Plaintiffs have claimed that employees with less seniority than Plaintiffs were retained during the November 2007 layoffs.  In addition, Bentley asserts that contrary to Defendants' arguments, he was capable of performing other jobs than driving the departments truck including working as a manual laborer or grader.

Simply put, this case presents a number of factual disputes that should not be resolved on summary judgment.  Little evidence has been presented about the precise financial condition of Knott County leading up to the November 2007 layoffs.  In addition, while Defendants have claimed that the layoffs were conducted based on seniority, they have not presented sufficient evidence of the seniority of all the employees who were laid off and retained by the road department to allow the Court to find in their favor.  Finally, with regard to Bentley, there is an unresolved factual dispute about whether he was capable of performing any other jobs than driving the road  department's gravel truck at the time of the layoffs.[15]  Based on its consideration of all of the evidence presented by both parties and mindful of the fact that it must view all of the evidence in light of the non-moving party, this Court does not find that the evidence is so one sided that Defendants are entitled to summary judgment.  *Jackson*, 168 F.3d at 909; *Boger v. Wayne County*, 950 F.2d 316, 322-23 (6th Cir. 1991).

---

[14] It does appear that Knott County began experiencing financial difficulties in 2007.  However, Defendants have failed to provide documentation of the precise amount of these budget shortfalls.  In addition, Defendants have failed to show how many employees needed to be laid off as a result of these budget shortfalls and to what extent the layoffs that were conducted alleviated these financial problems.

[15] Defendants have asserted that this was the only job that Bentley could perform but that he was no longer qualified to perform it because he had let his CDL license expire.

III.    CONCLUSION

For all of the above reasons, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Rec. No. 31) is **DENIED.**

Dated this 19th day of January, 2010.

Signed By:
*Karen K. Caldwell*
United States District Judge